## Epler *v.* Metzger.

*Promissory note—Receipt—Forgery—Evidence.*

In an action by an administrator upon a promissory note where the defendant offers in evidence a receipt alleged to have been signed by the decedent, a verdict and judgment for plaintiff will be sustained where the evidence for the plaintiff tended to show that at the date of the receipt the decedent was physically unable to write, and the credibility of a witness who testified that he saw the decedent sign the receipt, is impeached by a number of witnesses who swore that they would not believe him on his oath from the reputation that he bore in the community for truth and veracity.

Argued March 13, 1901.    Appeal, No. 6, March T., 1901, by defendant, from judgment of C. P. Dauphin Co., Sept. T., 1900, on verdict for plaintiff in case of D. M. Epler, Administrator of George Strickland, Deceased, v. David M. Metzger.    Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Assumpsit on a promissory note.    Before WEISS, J.

The facts appear by the charge of the court which was as follows:

The administrator of George Strickland found among the effects of the deceased a promissory note of some $60.00, given by David Metzger to him, and, as was his duty, he made demand for the payment of this note, and upon a refusal on the part of the defendant to pay he brought suit.    His defense to the payment of the note is that it has been paid, some time in 1898, and produces a receipt signed by the plaintiff's decedent to the effect that the receipt of so much money acknowledges satisfaction of all demands to the date of the receipt, including some lost or mislaid notes.    We say to you that the receipt, as it is and stands on its face, is in full discharge of all demands which the decedent had or which the plaintiff's decedent has to make upon the defendant, and if you find nothing else in the case you should render your verdict in favor of the defendant.    But it is said on the part of the plaintiff that the receipt is not a genuine one, that the signa-

ture of George Strickland is not a genuine signature, and that it was no act of his nor authorized by him in respect to this receipt. If that is so, then the receipt as it stands is inconclusive and your verdict will be in favor of the plaintiff. It is said that the witness who testified that he saw Strickland sign the receipt is not a credible one, and proof is brought here to show that he could not be believed on his oath. That is the usual way in testing witnesses on that ground. It is a question of reputation, and the testimony is that the witnesses on the stand would not believe him on his oath from the reputation that he bore in the community prior to the bringing of this suit for truth and veracity, and you will consider that in connection with the other testimony; and if you believe that he is not a credible witness and did not tell the truth respecting the signature which he says he saw Strickland make to this note, you will put it aside and treat it as of no value, consequence or effect in the case. If there is nothing else in the case, and you believe that Miller did not tell the truth in respect to Strickland's signature, then you will find your verdict in favor of the plaintiff. It is said further, however, that it was impossible for him to write because of the ravages of the disease with which he was afflicted, and that such were the encroachments of that disease that he was unable to close his hand or fingers and hold a pen with which to write, and you will remember whether there was evidence to show that he wrote, or is said to have written, the signature with the diseased hand. You will recall all the testimony in that respect; that at first his writing was not so much affected, that further on it was more affected, and that as more growth developed it so affected his hand that he could not close his fingers, nor his thumb and forefinger, or it may be any of his fingers. If that is so, then, independent of what the witness Miller said, there is some mistake by reason of the fact that it was not possible for him to use the diseased hand with which to write, and not being able to write it was not possible for him to put a signature there. It is further stated, in order to avoid the effect of the alleged signature of Strickland, that he was scarcely able to see; that his food had to be cut, and without glasses he couldn't well see; that on the day of the date of this receipt he did not have either of his two pair of

glasses along, because the witness had them in her posses-
sion, knew them, for he was living at her house as I recall it,
and that she laid them down where she saw them after she
had examined them. If that is so, then you may consider
whether it was possible, under the evidence, to write, and if
it was not, then it is not his signature, and that goes for
naught. You will then consider the question of handwrit-
ing, and the testimony is fresh in your minds in that respect.
We will not recite the testimony or go into detail with any
of the testimony. You will consider that and see whether
his handwriting would likely change or vary by reason of the
growth of this disease, and whether that signature may or may
not be his, changed and varied as the disease progressed, and
finally rendered him incapable to write, if it did so render him
incapable to write. You will consider all this testimony, and
you will give it due weight. [You will indeed conclude your
verdict by the weight of the testimony. Is there testimony
that outweighs the testimony that he signed this receipt? If
the weight of the testimony is in favor of the validity and gen-
uineness of the signature, it is your duty to find in favor of the
defendant. If the weight of the testimony is such that you
conclude it is greater in favor of the deceased not signing that
receipt, then you will find a verdict in favor of the plaintiff.
You will consider all of the evidence in the case and render
your verdict according to the weight and preponderance of the
evidence.] [1]

Verdict and judgment for plaintiff for $74.87. Defendant
appealed.

*Error assigned* was (1) the portion of the charge as above,
quoting it.

*I. B. Swartz*, of *Swartz Brothers*, for appellant.

*W. M. Hargest*, with him *John C. Nissley*, for appellee.

PER CURIAM, April 16, 1901 :

It is unnecessary to discuss the motion to quash. The as-
signments of error are without merit. The question was not
as to the effect of an admittedly genuine receipt in full, but as

to the execution of the receipt offered by the defendant. The instructions of the learned judge as to the burden of proof were quite as favorable to the defendant as he had a right to ask.

Judgment affirmed.